STERNBERGER *et al. v.* GLENN.

(*Nashville,* December Term, 1939.)

Opinion filed March 2, 1940.

· J. R. McDowell and W. H. Fisher, both of Memphis, for complainants.

Wm. G. Cavett, of Memphis, for defendant.

Mr. Justice Chambliss delivered the opinion of the Court.

Complainants alleged that having recovered a judgment at law and finding no other property of the defendant subject to execution, they caused an execution to be levied on defendant's life estate interest in a valuable tract of farm land of 200 acres, devised to him by his father's will; that a question was being made as to the right of creditors to subject this interest because of language in the will purporting to limit the power of alienation; that the raising of this question tended to obstruct the sale of the land and diminish its selling value and that it was to the interest of all parties concerned that this cloud should be removed before a sale; that a construction of the will was, therefore, demanded, and that this bill was filed for this purpose. The prayer was for a decree declaring the land subject to levy and sale so that a fair sale might be had under the existing levy, or under the order of the Chancery Court.

A lengthy demurrer was filed challenging the bill for want of equity, insisting that the Chancery proceeding involved added expense and was unnecessary, the remedy at law being adequate; that the will so plainly cre-

ated a "spendthrift trust" for appellant Glenn that no construction was required; that the interest vested in Glenn was not subject to sale under execution, and the levy was, therefore, void, and should be so decreed.

The Chancellor overruled the demurrer and granted the defendant an appeal. The Chancellor's decree did not set out the grounds of his action, and did not in terms construe the will, but counsel in this Court have briefed and submitted the case upon the assumption that the Chancellor not only held the bill to be properly filed, but rejected the insistence made by the demurrer that the will created a spendthrift trust. We shall so treat the decree of the Chancellor and pass upon this determinative issue.

After providing in preceding clauses for other children and devising other lands to them, and certain of it to appellant, his son Hugh, the testator proceeds:

"Item Eleven: I hereby give, grant and devise unto my said son, Hugh B. Glenn, for and during the term of his natural life only, and subject to the restriction of his power hereinafter set forth, that certain tract of land, containing two hundred (200) acres, more or less, lying in the old Fourth Civil District of Shelby County, Tennessee, and known as the James Carroll Place, having, at one time, belonged to said Carroll, and being my homestead place on which I now reside and being the same land conveyed to me by James Carroll by the deed of record in Book 75 on page 101 in the office of the Register of Shelby County, Tennessee. But this devise of said two hundred (200) acre tract of land to my said son for his life only is made solely upon the condition, restriction and limitation that he shall not have the power to sell, alien, transfer, convey, pledge, mortgage, or otherwise encumber said tract of land, or any income,

rent or other revenue derived therefrom and the power so to do is hereby reserved, withheld and withdrawn from and denied to him.

"I hereby give, grant and devise the remainder in fee-simple in said two hundred (200) acre tract of land, after the expiration of the life estates hereinbefore granted to my said son, Hugh B. Glenn, to the children of my said son who are left surviving at his death and in case any of his children shall have died before his death their descendants shall take their deceased parent's share, per stirpes.

"Item Twelve: I hereby nominate and appoint my son, Hugh B. Glenn, to be the executor of this my last will and testament and I hereby waive and direct that he be excused from and serve as such executor without giving the bond required of executors by law and without taking the oath required in such cases. I entrust the entire execution of this my last will to my said son and direct that he shall not account to any Court or other authority for his conduct as such executor. In testimony whereof, I, Granderson Glenn, do to this my last will and testament set my hand on this the 27th day of October, in the year of our Lord one Thousand nine Hundred and nineteen."

The theory advanced for appellant Glenn is that the effect of the words of restriction upon the power of alienation is to create a "spendthrift trust" for him as the beneficiary of this devise of the life estate. The argument is that we have here present all three of the elements essential to create a "spendthrift trust," in accord with the following summary of our decisions by Special Justice MALONE in his learned opinion in *White v. O'Bryan*, 148 Tenn., 18, at page 39, 251 S. W., 785, at page 791: "When an active trust is created by some

person other than the beneficiary, and is 'declared by will duly recorded, or deed duly registered,' a court of equity has no power or jurisdiction to subject the interest of the beneficiary.'' (And see an interesting discussion of this subject by this same distinguished jurist in Tennessee Law Review for December, 1939, page 46.)

Counsel for appellant stresses the exception in the statute, chapter 11, Acts of 1832, Code, Section 10353, which provides for creditors to subject a debtor's property by bill in equity, ''held in trust for him, except when the trust has been created by, or the property so held has proceeded from some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered.''

■ As has been seen (*White* v. *O'Bryan, supra*) our decisions require that this ''trust'' shall be an *active* one to bring it within the terms of this statute. But it will also be seen that the statute is dealing with property ''held in trust for him,''—not by *him*. And this suggests a fundamental defect in the contention here made. It may be conceded that appellant's property (1) has ''proceeded from some other person,'' and that his holding is ''declared by will duly recorded,'' but is his property ''held in trust *for* him''? And, if there is a trust at all, is it an active trust? The words of the statute, ''held in trust for him,'' are not without significance. A fundamental predicate for application of this statute is that there shall be (1) a trust, and (2) an active trust. We fail to find either.

■■ Bouvier's Law Dictionary, Rawle's Third Revision, defines a ''trust'' as ''a right of property, real or personal, held by one party for the benefit of another.'' Again, citing *Hospes* v. *Northwestern Mfg. & Car Co.*, 48 Minn., 174, 50 N. W., 1117, 1119, 15 L. R. A.,

470, 31 Am. St. Rep., 637, "trust implies two estates or interests,—one equitable and one legal; one person, as trustee, holding the legal title, while another, as the *cestui que* trust, has the beneficial interest." And again (Bouvier), "A trust arises when property has been conferred upon one person and accepted by him for the benefit of another." It was in recognition of this basic principle of the doctrine of trusts that the Act of 1832, doubtless phrased with care, because of its historical setting in our contemporary decisions (see Mr. Justice Lurton's historical review in *Jourolmon* v. *Massengill*, 86 Tenn., 81, 5 S. W., 719, 723), used the words "held in trust *for him*" in referring to the property being dealt with, for property is not held in trust unless it is held by one person for another. It is true that one may have himself a beneficial interest in property which he holds in trust for others,—but there must be others as to whom and for whom he is a *trustee*, that is, to quote Bouvier again, "A person in whom some estate, interest, or power in or affecting property of any description is vested for the benefit of *another*." (Our italics.)

It is argued, and authorities cited for the well settled rule, that equity will not permit a trust to fail for want of a trustee. But this never has application except where it clearly appears that there is a trust demanding execution. For illustration, consistently with this view and in clear recognition of the principle, in the course of his learned opinion in the Jourolmon case, Mr. Justice Lurton remarked, "Now, the purpose of the testator being to limit the devise to the son to a support for life, out of rents and profits, such purpose could not be carried out without the interposition of a trustee. If the devise had been direct to the son, of the rents and profits for life [as in the instant case], it would have vested in him

the life-estate,"—that is, a legal estate, subject to levy. See *Davis* v. *Williams*, 85 Tenn., 646, 651, 4 S. W., 8. "If he had devised the land in fee, and then limited the power of disposition to will, this would have been repugnant to the dignity of a fee, and the limitation would have been void. In any of the cases put, the estate would have been a legal estate, and subject to levy and sale at law. Manifestly, then, there was a necessity for a trustee, if the purpose of the testator should be carried out—that the rents and profits should go alone to the support of this son, and that they should not be subject to alienation or liability to legal process."

We find it unnecessary to pursue the subject further. Counsel cite us to no decision applying the "spendthrift" doctrine to a case on its facts like that before us, and holding that the mere incorporation of words of restriction of the power of alienation in a devise of an estate for life operate to create a spendthrift trust—and we know of none. While this Court is now fully committed to the recognition of the "spendthrift trust" doctrine partly induced by the Act of 1832 (see again Tennessee Law Review cited *supra*), the doctrine will not be extended to apply when the instrument creating the property rights fails to (1) create a "trust" in unmistakable terms, and (2) provide for a trustee. Lacking these elements we will not hold that property may be "so fenced around by inhibitions and restrictions as to secure to it the inconsistent characteristic of right and enjoyment to the beneficiary and immunity from his creditors," to use the vigorous language of an early writer.

Rejecting, for the reasons indicated, the contention of appellant that this property is protected from execution to secure this judgment debt, because a spendthrift trust was created by the terms of the will, we have

merely a legal title vested in the debtor owner by direct devise, "subject to levy and sale at law," *Jourolmon* v. *Massengill, supra,* as above quoted. It is obvious that the exception relied on in Code, Section 10353 (Act of 1832) can have no protective application whatever.

It will hardly be denied that, "A direct devise or conveyance, with a provision forbidding alienation by the devisee or grantee, or declaring that the property shall not be subject to execution, cannot withdraw the property from execution, for the prohibition does not operate to divest the debtor's estate and vest it in another, and while he retains the whole beneficial estate, it must carry with it the power to dispose of the property by transfer, whether voluntary or involuntary." Freeman on Executions, Second Edition, at page 536, citing *Bridge* v. *Ward,* 35 Wis., 687, and *Blackstone Bank* v. *Davis,* 21 Pick. (Mass.), 42, 32 Am. Dec., 241. An interesting sustaining note will be found following the last cited case. The Wisconsin case is directly in point, the syllabus, which is sustained by the text, reading, "where there is a devise of a life estate in land with a mere provision restricting the devisee from selling the same, this will not prevent a sale of the devisee's interest *on execution* against him." In the case of *Fowlkes* v. *Wagoner,* 46 S. W., 586, Judge NEIL, then a member of the Court of Chancery Appeals, has an opinion exhaustively reviewing the principles applicable to restrictions on alienation in a devise, citing numerous authorities, his conclusion being fully in accord with the rules above stated.

In his learned treatise on "Restraints on the Alienation of Property," Professor Gray deals with different phases of this interesting question and recognizes a distinction between a condition or limitation over on alienation of a life estate, and a restraint which would

void any transfer, but would not terminate the estate,— the first being held valid and the second invalid (2nd Ed., Sec. 134). And Richard E. Manning in Harvard Law Review, for January, 1935 (page 373, *et seq.*), discusses this question, and after a full review of the subject announces that the rule laid down by Professor Gray, as above stated, is the law in most of the United States. As has been seen, we are not dealing in this case with the right or effect of a voluntary transfer, as to which we, therefore, express no opinion, but with an alienation brought about by levy and sale under execution of judgment creditors. Upon this issue we find no division of authority and, therefore, this Court will decree a declaration that the property involved and held as described is subject to execution.

As before stated, the demurrer raised a question as to the right of complainants to bring this bill in the Chancery Court, upon the theory that the remedy at law was adequate. The prayer of the bill was for a declaration, in view of the controversy shown by the bill to have arisen over the construction of this will. We think a sufficient showing is made by the bill to justify the filing of the bill pursuant to the authority of Code, Sections 8835 to 8847, providing for declaratory judgments. However, this declaration is the sole relief granted and complainants below are relegated for all further proceedings to their remedy at law, where such sale as may be made of the property will be subject to the usual right of redemption. The costs of this cause, including the appeal, will be divided. With the modifications indicated, the decree of the Chancellor is affirmed. *Procedendo* will issue to the Chancery Court where the decree of this Court will be made the decree of that Court.